AO 106 (Rev. 04/10) Application for a Search Warrant

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 09 2019

at 2 o'clock and 39 min. 0 M
SUE BEITIA, CLERK

# UNITED STATES DISTRICT COURT

ORIGINAL

for the
District of Hawaii

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Seven mini cameras; one Silver Sony Vaio laptop, model
no. PCG-7Z2L; Six micro SD memory cards; Three
memory sticks.

)
)
)
)
)
)

Case No. 19-654 KSC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ Hawaii _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sect. 2422(b) and 2251(a) | Coercion and Enticement; Sexual exploitation of children |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Evelyn Ramo, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/9/17

City and state: Honolulu, Hawaii

_____
*Judge's signature*

HON. WES REBER PORTER, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

EVELYN RAMO, being first duly sworn, hereby deposes and states the following:

1.      I am a Special Agent with Homeland Security Investigations ("HSI"), presently assigned to the Honolulu Office, Cyber Group. I have been employed as a Special Agent with HSI since May 1998. I have investigated and assisted in criminal cases, including internet crimes against children, drug smuggling, human smuggling, human trafficking, fraud, illegal exports and other violations. I have received training in the investigation of the sharing of child pornography on peer-to-peer networks, chat groups, and chat rooms, including training provided by the Internet Crimes Against Children ("ICAC") task-force for the investigation of individuals enticing minors to engage in sexually explicit activities, and downloading and/or sharing child pornography.

2.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I am familiar with the facts in this affidavit based upon my personal knowledge and/or information provided to me by other law enforcement personnel and/or witnesses. Summaries and statements from conversations do not include references to all topics covered in the conversations. This affidavit is not intended to include each and every fact and matter observed or known to the government.

3.      I submit this affidavit in support of an application for a search

1

warrant to search: Seven (7) mini cameras; One (1) Silver Sony Vaio laptop,

Model number PCG-7Z2L; Six (6) micro SD memory cards, and Three (3)

memory sticks, described in Attachment A hereto (referred to herein as the

"Subject Devices"), for the items listed in Attachment B hereto.  Based on the facts

set forth below, there is probable cause to believe that evidence, fruits and/or

instrumentalities will be found in the Subject Devices relating to coercion or

enticement of a minor, in violation of Title 18, United States Code, Section

2422(b), and relating to sexual exploitation of children, in violation of Title 18,

United States Code, Section 2251(a).

   4.   I request this search warrant pursuant to Rule 41(e)(2)(A) and (B).

The warrant would authorize the forensic examination of the items seized for

identifying electronically stored data particularly described in Attachment B.

## SUBJECT OFFENSES

   5.   Title 18, United States Code, Section 2422(b), makes it a federal

crime for any person to knowingly use any facility or means of interstate or foreign

commerce to knowingly persuade, induce, entice or coerce any individual who has

not attained the age of 18 years to engage in any sexual activity for which any

person can be charged with a criminal offense.

   6.   Title 18, United States Code, Section 2251(a), makes it a federal

crime for any person to employ, use, persuade, induce, entice or coerce a minor to

2

engage in sexually explicit conduct for the purpose of producing any visual

depiction of such conduct, if such person knows or has reason to know that such

visual depiction will be transported or transmitted using any means or facility of

interstate or foreign commerce.  Hereinafter, these offenses shall be referred to as

the "Subject Offenses."

## BACKGROUND

7.     On March 24, 2019, Neil BOTH-MAGNISI ("the Defendant") was

arrested for attempted enticement and coercion of a minor, in violation of 18

U.S.C. § 2422(b).

8.     On or about July 3, 2019, federal law enforcement received

information from the Honolulu Police Department that a reporting individual, who

was aware that the Defendant is facing charges relating to child exploitation, made

a police report stating that the mother of the Defendant, Ms. Both told him/her that

she visited the Defendant at the Federal Detention Center (FDC) on June 30, 2019.

The reporting individual further reported that the Defendant instructed Ms. Both to

retrieve several toy cars from his home, where Ms. Both now resides.  These toy

cars are purportedly equipped with hidden video recording equipment.  The

reporting individual indicated that the Defendant instructed Ms. Both to destroy

these items.  The reporting individual believed that the recording equipment

contained evidence of child pornography.

3

9.     The Subject Devices are now in the custody of the U.S. Department of Homeland Security, Homeland Security Investigations, 300 Ala Moana Boulevard, Room 7-238, Honolulu, Hawaii.

10.     For the reasons set forth more completely below, I believe that the Subject Devices contain evidence, fruits, and instrumentalities pertaining to the Subject Offenses, and I now seek a warrant to search the contents of the Subject Devices for such evidence, fruits, and instrumentalities.

## PROBABLE CAUSE

11.     On March 19, 2019, an undercover law enforcement officer ("the UC") posted a profile on a social media and dating application (referred to herein as "the App"), which allows users to interact with other users with text messages and photos. The App also incorporates geolocation functionality, which allows its users to view other profiles that are close to them in proximity. Users can download the App to a mobile phone or digital device and engage in messaging directly with other users.

12.     The UC created a profile that displayed a photograph of a boy with a white hat, with the username "Rooster 94." Generally, the number next to the username on a profile represents the user's age, which is calculated by the date of birth a user inserts into his/her profile. In the biography section, which enables a user to insert an introductory sentence or phrase, the profile stated "Younger than

4

you think." In the "looking for" section of the profile, the UC stated, "Chat, Dates, Friends, Networking, Relationship, Right Now." In my training and experience, the term "Right Now," indicates that a user is interested in sexual encounters within a short timeframe.

13.     That day, the profile received a message from another profile with a sexually-suggestive phallic eggplant symbol as a username together with the term, "ASAP," and the profile photo showing only a sunset, with no person. In the days following, the following conversation then took place:

> Defendant: Hey... So how old do I think you are? ... You have me
> curious. Message me if you log in today.
>
> UC: You tell me
>
> Defendant: 22? Or are you younger?
>
> UC: Nope I'm way younger than that...I'm 13
>
> Defendant: Damn lol ... Nice. What are you doing on here?

After further conversation, on March 21, 2019, the UC asked the Defendant for a photo of himself. The following conversation took place:

> UC: Only if i can see you first
>
> Defendant: Forgive me if I don't send a face picture to somebody who
> is 13 ... That's just like asking to go to jail
>
> UC: Lol, is it?

5

Defendant: Basically

UC: How so?

Defendant: I might be a pedophile but I don't want everybody to

know it … And you do you kind of seem too good to be true …

The Defendant later sent the following message: "If I were to come to

you … What would you want to do … Cause I'm into young boys."

Later, the Defendant wrote, "I'm not saying I would want to fuck you if you're not

ready for it … But I'm down to suck the fucking cum out of your cock."

14.     Later in the conversation, the UC and the Defendant exchanged phone

numbers and text messages. At one point in the conversation, the Defendant wrote,

"You think you can handle this dick?" The UC responded, "psst..yes! got lube and

condoms?" The Defendant responded, "Yup." Later, while discussing meeting up

in person, the Defendant wrote, "How long is your dick … I should buy you some

condoms too."

15.     The UC and the Defendant arranged a location to meet in person.

After showing up at this location, within the District of Hawaii, on March 24,

2019, the Defendant requested multiple additional photos of the UC, writing,

"Listen I just need to be sure that you are who you say you are … As soon as I am

sure of that we can do anything you want to do … I drove all the way out here to

meet you." The Defendant wrote that he had gotten out of his truck to walk around,

6

but wasn't able to locate the purported minor. He continued to request photos of

the minor, writing, "You're just not the one that's risking jail." At approximately

5:48 PM, the Defendant wrote to the UC, "I'm the guy in the black van." Law

enforcement identified a black van near the meet location and converged upon it.

Law enforcement officer ordered the Defendant out of the van. To determine

whether the Defendant was in possession of the same phone used to text with the

UC, law enforcement called the phone number associated with the text messages

sent to the UC. A black iPhone that was near the Defendant's person instantly

rang. Law enforcement arrested the Defendant without incident and placed his

cellphone into evidence.

16.     On April 4, 2019, a federal grand jury returned a one count indictment

against the Defendant charging him with attempted enticement of a minor.

17.     On or about July 3, 2019, Federal Bureau of Investigation (FBI)

Special Agent Sherwin Chang contacted me that he received information from the

Honolulu Police Department (HPD) regarding a report relating to the Defendant.

HPD related to SA Chang that on July 2, 2019, an individual, who identified

her/himself by name, visited the Pearl City HPD station and spoke with an HPD

officer. The name of the individual is known to HPD, as well as to the FBI and to

me, but is being withheld from this affidavit.

18.     The individual claimed to be a friend of the Defendant's mother, Nanci Both, and was aware that the Defendant is facing criminal charges relating to child exploitation. The individual explained to an HPD officer that s/he had spoken with Ms. Both earlier that day on July 2, 2019, and that Ms. Both confided in her/him that she had visited the Defendant at the Federal Detention Center, Honolulu (FDC) on June 30, 2019.

19.     According to the individual, the Defendant indicated to Ms. Both that the "feds" were mostly likely going to search their home. In anticipation of this, the Defendant instructed Ms. Both to search their home for certain items that belonged to the Defendant and dispose of them. In the report to HPD, the individual indicated that Ms. Both reported that she searched the home and located 12 to 15 black toy cars. The reporting individual said that Ms. Both appeared to understand that the toy cars were equipped with hidden video recording equipment. The reporting individual believed that these toy cars contained child pornography.

20.     On July 5, 2019, I obtained the HPD report relating to the above information. Subsequent to my receiving this report, FBI SA Chang obtained the reporting individual's contact information and spoke with him/her directly. The individual verified that he/she has regular professional interaction with Ms. Both as a result of their respective employment, and the two socialize while working several times per week.

8

21.     The individual verified the facts of the HPD report to SA Chang, but added that Ms. Both had told her that she had found as many as 20 toy cars. The individual then explained that Ms. Both had physically brought one of the Defendant's black toy cars with her to work and showed it to him/her. The individual explained that Ms. Both produced one of the black toy cars, and placed it in her/his hand. The individual described the car as being "skinny" with four doors. Ms. Both then asked the individual if s/he could see a camera. The individual told FBI SA Chang that s/he thought that a lens was visible in the car.

22.     The individual reported to FBI SA Chang that s/he told Ms. Both that Ms. Both should not be touching the toy car. The individual reported that after this interaction, she was in text message communication with Ms. Both. Shortly after speaking with Ms. Both, the individual went to HPD to report her interaction with Ms. Both.

23.     According to information received from U.S. Pretrial Services, the Defendant resides at 1701 Skyline Drive, Honolulu, Hawaii 96817. I understand that Ms. Both currently resides at 1701 Skyline Drive.

24.     On July 5, 2019, United States Magistrate Judge Wes Reber Porter, authorized a Search and Seizure Warrant, Mag. No. 19-637 KSC. On the same date, I attempted to serve the above Search Warrant at 1701 Skyline Drive, Honolulu, Hawaii 96817.

25.     The address on the warrant, 1701 Skyline Drive, was home to two different structures. Because Ms. Both physically resided in a different structure than the one that was described in the warrant, I did not execute the warrant, but instead obtained written consent from Ms. Both to search her home.

26.     Law Enforcement Agents interviewed Ms. Both at her house. Ms. Both verified that she resided at 1701 Skyline Drive, Honolulu, Hawaii 96817, and that she took over the lease agreement from her son, the Defendant, in or about April 2019. Ms. Both told Agents that she was the only person on the lease agreement at 1701 Skyline Drive, Honolulu, Hawaii 96817.

27.     Ms. Both told Agents that while visiting her son, the Defendant, on June 30, 2019, he instructed her to look for items described as little cameras that he used for treasure hunts. Ms. Both told Agents that her son told her to get rid of anything that looks like an "electronic [device]." Ms. Both told Agents that her son told her that his attorney advised him that the "feds" were going to look through the house.

28.     Ms. Both provided to Agents six (6) black-colored mini cameras, which resembled toy cars that were stored inside a pink-colored pouch with prints. Ms. Both told Agents that these mini cameras belonged to her son, the Defendant. Ms. Both said that she found the mini cameras in her son's dresser. Ms. Both also

provided to Agents a Sony Vaio laptop, which she said belonged to her son, the Defendant.

29.     Ms. Both showed Agents her son's dresser where she found the six black colored mini cameras.  In that same dresser, Agents recovered another black-colored mini camera that was similar to the mini camera's Ms. Both provided. Agents also recovered from the same dresser six (6) micro SD cards, which appeared to correlate with the black-colored mini cameras, and one (1) memory stick.   In another bedroom, Agents recovered two (2) additional memory sticks.

## **DEFINITIONS**

30.     "Child Pornography" as used in this affidavit, is defined pursuant to Title 18, United States Code, Section 2256(8): any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where –

> a. the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> b. such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

11

c. such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

31.    "Minor" as used in this affidavit, is defined pursuant to Title 18, United States Code, Section 2256(1) as "any person under the age of eighteen years."

32.    "Sexually Explicit Conduct" as used in this affidavit, is defined pursuant to Title 18, United States Code, Section 2256(2) as "actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals of pubic area of any person."

33.    The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form, (including, but not limited to, writings, drawings, paintings), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to phonograph, records, printing, typing), or electrical, electronic, or magnetic form (including, but not limited to, tape recordings, cassettes, compact disks, electronic or magnetic storage devices such as floppy

12

diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital

Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks,

smart cards, as well as digital data files and printout or readouts from any

magnetic, electrical, or electronic storage device).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     Based upon the facts above, I believe that probable cause exists to

search the Subject Devices for evidence, fruits, and instrumentalities of the Subject

Offenses.

35.     As a result of my training and experience and the experience of other

law enforcement personnel involved in this investigation, I know that individuals

who have a sexual interest in minors and are engaged in child sexual exploitation

often utilize electronic video recording devices, to include memory cards/sticks, to

record and store images and videos for their sexual gratification.  I know that

individuals who engage in the sexual exploitation of minors often produce, share,

and distribute images and videos of child pornography with other pedophiles, and

use it to communicate with minors in an effort to entice minors to engage in sexual

activities.   I also know that collectors, traders, or people who trade child

pornography often utilize computers, laptops, and other electronic devices to:

(a) correspond with like-minded individuals via e-mail, chat rooms or chat groups,

bulletin boards, newsgroups, instant messages, file transfers, and other means;

13

(b) store identifying information concerning child victims, as well as identifying information about other individuals who share the same interests; (c) locate, view, download, collect, and organize images of child pornography found throughout the Internet. Computers also afford individuals a degree of anonymity.

36.     Based on my knowledge, training, and experience, and conferral with other law enforcement agents who specialize in the examination of forensic evidence, I know that electronic devices can store information, including information relating to images and videos, for long periods of time. This information can sometimes be recovered with forensics tools.

37.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device(s) because:

> a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy," while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.  I know that when an individual uses an electronic device in the commission of an offense, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

38.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts

of the device to human inspection in order to determine whether it is

evidence described by the warrant.

## CONCLUSION

I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Subject Devices described in Attachment A to

seek the items described in Attachment B.

Respectfully submitted,

EVELYN RAMO
Special Agent
HOMELAND SECURITY
INVESTIGATIONS

Subscribed and sworn to
before me this 9th day
of July, 2019.

WES REBER PORTER
UNITED STATES MAGISTRATE JUDGE
District of Hawaii

17

## ATTACHMENT A

The property to be searched are as follows:

1. Seven (7) mini cameras;

2. One (1) Silver Sony Vaio laptop, Model number PCG-7Z2L;

3. Six (6) micro SD memory cards;

4. Three (3) memory sticks.

The above-mentioned Subject Devices are currently located at the U.S. Department of Homeland Security, Homeland Security Investigations, 300 Ala Moana Boulevard, Room 7-238, Honolulu, Hawaii 96813.

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### ITEMS TO BE SEIZED AND SEARCHED

Authorization is sought to search for and seize all records and evidence relating to violations of 18 U.S.C. §§ 2422(b) and 2251(a). This authorization includes the search of electronic data to include deleted data, remnant data and slack space. Items to be seized include the following:

a.     All electronic devices, computer systems, digital cameras, software, peripherals and data storage devices, and any records or documents that contain—or offer to transmit or receive—any depictions of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or any minor engaged in a sexually suggestive pose, position, or clothing.

b.     Documents, including all temporary and permanent electronic files and records, (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files) which contain, attach, or describe child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

c.     User-attribution data to include data reflecting who used or controlled the electronic storage device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed.

User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata.

d.      Any record or document that shows the offer to transmit or receive any depictions of a minor engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

e.      Information evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; credit card information including but not limited to bills and payment records.

f.      Any and all usernames, email accounts, or online identities that may have been used for the sexual exploitation of minors or for communications with individuals sharing an interest in the sexual exploitation of children.

g.      For any computer hard drive or other electronic media (*i.e.*, laptop, memory card, digital camera) found to contain information otherwise called for by this warrant, and any computer or storage medium that

3

contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

1. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

2. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

3. evidence of the lack of such malicious software;

4. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

5. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

4

6. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

7. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

8. evidence of the times the COMPUTER was used;

9. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

10. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

11. records of or information about Internet Protocol addresses used by the COMPUTER;

12. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

13. contextual information necessary to understand the evidence described in this attachment.

5

h.     Any storage devices, such as SIM cards or flash memory devices attached to, inserted in or seized with the device(s), will be analyzed and the following data will be seized only to the extent that it contains or depicts evidence of violations of 18 U.S.C. §§ 2422(b), 2251(a), including evidence reflecting use, dominion and control of the device:

1.     Communications, records, or data including but not limited to photographs, audio files, videos, or location data:

a.     tending to indicate efforts to distribute, receive, possess or view images of, minors engaged in sexually explicit conduct;

b.     tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate the presence of images of minors engaged in sexually explicit conduct;

c.     tending to identify co-conspirators, criminal associates, or others involved in the distributing, receiving or possessing of images of minors engaged in sexually explicit conduct;

6

d.      tending to identify travel to or presence at locations that concern the existence of images of minors engaged in sexually explicit conduct;

e.      tending to identify the user of, or persons with control over or access to, the device(s); or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation, receipt or modification of communications, records, or data above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control

of attorneys for the government and their support staff for their independent review.